Melissa A. Reinckens (Bar No. 314657)
melissa.reinckens@us.dlapiper.com
Licia E. Vaughn (Bar No. 185819)
licia.vaughn@us.dlapiper.com
Susan N. Acquista (Bar No. 253969)
susan.aquista@us.dlapiper.com
**DLA PIPER LLP (US)**
4365 Executive Drive, Suite 1100
San Diego, California 92121-2133
Tel: (858) 677-1400
Fax: (858) 677-1401

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

# SAN DIEGO DIVISION

FROM NOTHING LLC,

      Plaintiff,

      v.

DIRT BIKE KIDZ, INC. and Jeremy
D. Stenberg,

      Defendants.

CASE NO. **'26CV3714 JES  VET**

**COMPLAINT**

COMPLAINT

Plaintiff From Nothing LLC ("Plaintiff") alleges against Defendants Dirt Bike Kidz, Inc. and Jeremy D. Stenberg ("Defendants") as follows:

## <u>NATURE OF THE ACTION</u>

1.      This is an action for trademark infringement under the Lanham Act, 15 U.S.C. § 1051, *et seq*., arising from Defendants' unauthorized use of the mark "DBK" (the "DBK Mark").

2.      Plaintiff is an American skateboard, action sports, and lifestyle brand founded in 2002. Through its flagship "DGK" brand—an acronym for "Dirty Ghetto Kids"—Plaintiff has built a globally recognized streetwear company rooted in authentic skate culture, inner-city identity, and hip-hop influence. What began as a derogatory label directed at Plaintiff's founder and his peers has been deliberately reclaimed and transformed into a symbol of resilience, creativity, and pride. For more than two decades, Plaintiff has sold apparel, accessories, and skateboarding gear under the DGK mark, cultivating widespread recognition across core skateboarding, music, fashion, and youth culture.

3.      Plaintiff's DGK brand is uniquely associated with this cultural narrative and aesthetic, which blends street art, graffiti, and urban sensibilities, and serves as an empowering message for marginalized youth. The brand's authenticity and influence have been reinforced through collaborations with prominent artists, fashion figures, and cultural icons, as well as its longstanding presence within the skateboarding community and broader popular culture.

4.      In blatant disregard of Plaintiff's registered trademark rights and the substantial goodwill embodied in the DGK mark, Defendants began selling competing apparel and accessories bearing the confusingly similar DBK Mark, often in near identical font, styles, and colorways, in an effort to trade on and appropriate Plaintiff's distinctive brand identity and reputation.

///

- 1 -

5.      Defendants' use of the DBK Mark is likely to cause confusion among consumers as to the source, sponsorship, or affiliation of Defendants' products, to the detriment of Plaintiff. Despite Plaintiff's demand that Defendants cease their infringing conduct, Defendants have refused to do so and, absent intervention by this Court, will continue their unlawful activities. Plaintiff therefore seeks injunctive relief prohibiting further use of the DBK Mark, as well as monetary damages.

## THE PARTIES

6.      Plaintiff is a limited liability company existing under the laws of the state of California and has a principal place of business at 6351 Yarrow Drive, Suite D, Carlsbad, California 92011.

7.      Defendant Dirt Bike Kidz, Inc. ("DBK") is a corporation existing under the laws of the state of California and has a principal place of business at 30810 Wealth St., Murrieta, California 92563.

8.      Defendant Jeremy D. Stenberg ("J. Stenberg") is and, at all relevant times herein mentioned, was an individual residing in Temecula, California. On information and belief, Defendant J. Stenberg is the founder of DBK.

## JURISDICTION AND VENUE

9.      This action arises under the Lanham Act, 15 U.S.C. § 1051, *et seq*.

10.      This Court has original subject matter jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. §§ 1331 and 1338(a), as well as 15 U.S.C. § 1121(a) because Plaintiff's claims arise under the Lanham Act, 15 U.S.C. § 1051, *et seq.*

11.      This Court has personal jurisdiction over Defendants because the causes of action pled herein arise from Defendants transacting business in California, and Defendants causing injury to Plaintiff by acts or omissions taking place in California.

12.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to the claims for relief herein occurred in

- 2 -

this judicial district, and Defendants are subject to the Court's personal jurisdiction for the claims alleged herein.

## FACTUAL ALLEGATIONS

### A. Plaintiff's DGK Brand

13. Plaintiff is a U.S.-based company operating in the skateboarding, action sports, and lifestyle markets. Since at least as early as 2002, Plaintiff has offered apparel, accessories, and skate-related equipment under a family of marks incorporating "DGK" (the "DGK Marks"), which have achieved widespread recognition.

14. Plaintiff's DGK brand was founded by professional skateboarder Stevie Williams in Philadelphia, Pennsylvania. The brand's name, "DGK" is an acronym for "Dirty Ghetto Kids," a phrase that was originally used as a derogatory remark directed at Williams and his skating crew in the 1990s. The phrase was adopted and transformed by Williams into a brand identity that signifies perseverance, authenticity, and advancement despite adversity.

15. Over time, the DGK Marks have become associated not only with skateboarding products, but also with a broader cultural identity that blends influences from urban communities, music, and visual art. The brand is known for its distinctive design language, including elements inspired by graffiti and street art, and for messaging that resonates with individuals overcoming challenging circumstances, including its widely recognized ethos, "For Those Who Come From Nothing."

16. Since its launch, DGK has continuously used the DGK Marks in connection with the design, manufacture, marketing, distribution, and sale of a broad array of goods, including skateboards and related hardware (such as skateboard decks, skateboard trucks, skateboard wheels, grip tape, bolts, ball bearings), as well as apparel and accessories, including t-shirts, sweatshirts, jackets, pants, cargo wear,

- 3 -

headwear, accessories, sunglasses, and stickers. Representative products are shown below.

*Figure 1*

 

*Figure 2*

 

- 4 -

*Figure 3*



*Figure 4*




- 5 -

*Figure 5*



*Figure 6*



COMPLAINT

17. In connection with this longstanding and extensive use, Plaintiff has secured multiple federal trademark registrations for the DGK Marks, including those identified in the accompanying chart (the "DGK Registrations"):

| Trademark | Registration No. | Registration Date | Full Goods/Services |
|---|---|---|---|
| DGK | 4,451,471 | December 17, 2013 | Int'l Class: 18 All-purpose athletic bags; All-purpose carrying bags; Backpacks; Wallets |
| DGK | 4,451,472 | December 17, 2013 | Int'l Class: 14 Bracelets; Key chains as jewellery; Necklaces; Ornamental pins |
| DGK | 4,451,473 | December 17, 2013 | Int'l Class: 09 Sunglasses |
| DGK | 3,849,975 | September 21, 2010 | Int'l Class: 28 Ball bearings for skateboards; Nuts and bolts for skateboards; Skateboard decks; Skateboard grip tapes; Skateboard trucks; Skateboard wheels |
| DGK | 3,849,974 | September 21, 2010 | Int'l Class: 25 Beanies; Belts; Caps; Hats; Hooded sweat shirts; Jackets; Jeans; Pants; Shirts; Socks; T-shirts |
| DGK | 3,975,469 | June 7, 2011 | Int'l Class: 14 Watches |
| DGK | 7,925,759 | September 2, 2025 | Int'l Class: 16 stickers, printed caledars, printed |

- 7 -

COMPLAINT

| Trademark | Registration No. | Registration Date | Full Goods/Services |
|-----------|-----------------|-------------------|---------------------|
|           |                 |                   | magazines in the field of skateboarding |

18. The DGK Registrations remain valid and in force. Copies of the corresponding registration certificates are attached as Exhibit A. Several of these registrations have achieved incontestable status pursuant to 15 U.S.C. § 1065, and constitute conclusive evidence of Plaintiff's exclusive ownership and right to use the marks in commerce for the covered goods under 15 U.S.C. §§ 1065 and 1115(b).

19. Apart from its federal registrations, Plaintiff has developed significant common law rights in the DGK Marks through continuous, substantially exclusive use in commerce over a period exceeding two decades, both domestically and internationally.

20. Plaintiff has further enhanced the commercial strength and distinctiveness of the DGK Marks through collaborations and licensing relationships with well-known brands, artists, and cultural figures. These partnerships—include, among others, Kaido House, Bruce Lee Enterprises, Adidas, Fila, G-Shock, Thrasher, Raw, the Rosa Parks Estate, 7-Eleven, the LA Galaxy, the Chicago White Sox, and Virgil Abloh—underscore DGK's sustained relevance across multiple industries, including fashion, sports, and entertainment. Examples of Plaintiff's collaborations are below.

///

- 8 -

COMPLAINT

*Figure 7*



*Figure 8*



- 9 -

*Figure 9*



*Figure 10*



21.    In addition to its core skateboarding apparel and related products, Plaintiff has expanded the reach of the DGK Marks into other action sports markets, including motocross. As shown below, Plaintiff designs, manufactures, and sells motocross-style apparel bearing the DGK Marks and has collaborated with other action sports brands, including Honda, Kawasaki, Nissan, and ThirtyTwo, among others.

*Figure 11*



*Figure 12*



- 11 -

*Figure 13*



22.    Through these activities, and its continued presence in media, collaborations, and cultural events, the DGK Marks have developed extensive goodwill and recognition among consumers across diverse audiences.

23.    DGK-branded products are sold through Plaintiff's website, dgk.com, as well as through authorized retail partners, such as Zumiez, action sport retailers, skate shops, and major department stores throughout the United States and internationally.

24.    As a result of Plaintiff's extensive and continuous use and promotion of the DGK Marks in connection with its products, the DGK Marks are widely recognized and have acquired substantial value as specific identifiers of Plaintiff's products and serve to identify and distinguish Plaintiff's products from those of others. Indeed, the DGK Marks are widely recognized by consumers, the public, and

COMPLAINT

buyers of skate apparel, accessories, and skateboarding equipment, among other diverse audiences as being exclusively associated with Plaintiff and its products.

**B. Defendants' Adoption and Use of the Infringing DBK Mark**

25.    On information and belief, Defendant J. Stenberg is the founder of and most responsible person in charge at Defendant Dirt Bike Kidz, Inc.

26.    On information and belief, Defendant J. Stenberg personally chose the brand name DIRT BIKE KIDZ and the DBK Mark.

27.    On information and belief, Defendant J. Stenberg and is responsible for and directs the activities of Defendant Dirt Bike Kidz, Inc.

28.    On information and belief, Defendants launched a motocross, action sport, and lifestyle apparel and accessories brand in which it began to market and sell its products under the name "Dirt Bike Kidz" (the "DIRT BIKE KIDZ Mark") and prominently use the three-letter acronym "DBK" (the "DBK Mark") as a brand identifier across its products and marketing materials. Examples of Defendants' products are embedded below.

*Figure 14*



COMPLAINT

*Figure 15*

 

*Figure 16*



- 14 -

*Figure 17*



*Figure 18*

 

- 15 -

*Figure 19*



29.    On information and belief, Defendant J. Stenberg exercises a great amount of control over decisions concerning the creation, design, manufacture, marketing, and sale of goods bearing the DBK Mark.

30.    On information and belief, Defendant J. Stenberg personally oversees, participates in, approves, and ratifies use of the DBK Mark on Defendants' apparel.

31.    By way of example, Defendant J. Stenberg promotes DBK-branded apparel on his personal social media accounts.

32.    As such, Defendant J. Stenberg is directly liable for the activities of Defendant Dirt Bike Kidz, Inc. related to the use of the DBK Mark.

33.    Defendants market their DBK-branded products online at https://www.dirtbikekidz.com/ and through various action sports retailers. Defendants' DBK-branded products have been offered for sale and sold alongside Plaintiff's DGK-branded products at retailers like Zumiez.

34.    Defendant J. Stenberg and Susan Stenberg co-own a U.S. federal trademark registration for DIRT BIKE KIDZ (Reg. No. 4696234) covering "apparel,

COMPLAINT

namely, shirts, jerseys, hats, jackets, shoes; motorcycle gloves for use by adults" in Class 25.

35.    Defendant J. Stenberg and Susan Stenberg previously co-owned a, now abandoned, U.S. federal trademark application for DBK & Design (App. No. 85-414685) covering "Shirts, hats, pants, sweatshirts, jackets, shoes, sunglasses" in Class 25 and "Entertainment events, videos" in Class 41.

36.    Defendants' DBK Mark is a three letter acronym.

37.    Defendants' DBK Mark only differs from Plaintiff's DGK Marks by one letter.

38.    The letters "B" and "G" share a phonetic resemblance as both letters are consonants that share a similar "ee" vowel sound when spoken aloud.

39.    When consumers hear or speak the marks "DGK" and "DBK," the aural similarity between the two letters renders the DBK Mark and DGK Marks nearly indistinguishable in oral communications.

40.    Defendants' DBK Mark mirrors an identical structure to Plaintiff's DGK Marks insofar that both are acronyms for marks that identify a particular subculture followed by a variation of the term "kids."

41.    Both the DGK Marks and DBK Mark convey a near identical commercial impression, as shown in the examples below.

///

- 17 -

COMPLAINT

*Figure 20*




*Figure 21*




- 18 -

*Figure 22*




Figure 23




- 19 -

*Figure 24*

 

42.     Defendants market the DBK brand as intended for fans of action sports and its products as intended to reflect the adrenaline-fueled and adventurous lifestyle such fans share.

43.     Defendants have collaborated with skate brands and have advertised product drops resulting from such collaborations as blending moto, street bikes and skate.

///

COMPLAINT

*Figure 25*

44.    Defendants position their DBK brand as representing an action sports lifestyle. Such positioning mirrors Plaintiff's established brand identity as an action sports lifestyle brand.

45.    Defendants design, manufacture, market, distribute, and sell a wide range of apparel and accessories, including without limitation, t-shirts, hoodies, tank tops, and headwear, that prominently feature the DBK Mark in a manner that is highly similar to and directly overlaps with and competes against Plaintiff's product offerings.

46.    Defendants adopted and used the DBK Mark with actual knowledge of Plaintiff's prior rights in the DGK Marks.

- 21 -

COMPLAINT

47.   On information and belief, Defendant J. Stenberg was personally aware of Plaintiff's DGK brand and the DGK Marks at the time he launched the DBK brand.

48.   On information and belief, Defendant J. Stenberg actively and personally drove the infringing activities described herein, including by having personal involvement in the design and marketing of DBK-branded apparel with strikingly similar designs as Plaintiff's DGK-branded apparel.

49.   On information and belief, Defendant J. Stenberg willfully and knowingly designed apparel bearing the DBK Mark with the intention of copying and trading on the goodwill and widespread recognition of Plaintiff's DGK brand.

50.   The similarities between the DBK Mark and the DGK Marks— including the identical three-letter acronym structure, the nearly identical letter composition (differing by only one letter), the overlapping "kids" theme, and the parallel action sports lifestyle positioning—are too specific and numerous to be coincidental. On information and belief, Defendants deliberately selected the DBK Mark to trade on the goodwill and consumer recognition associated with Plaintiff's DGK Marks.

51.   Defendants' willful infringement is further evidenced by their continued use of the DBK Mark despite receiving Plaintiff's cease-and-desist demand.

52.   Defendants' use of the DBK Mark has confused or will confuse consumers, will mislead the public as to the nature, origin, and sponsorship of Defendants' goods, and constitutes infringement of the DGK Marks. This use is wholly without permission or license from Plaintiff, is unfair and deceptive, and will cause injury to Plaintiff's goodwill, identity, and reputation for which there is no adequate remedy at law.

///

- 22 -

## C. Plaintiff's Discovery of Defendants' Infringement

53.    Plaintiff first became aware of Defendants' infringing use of the DBK Mark no earlier than October 25, 2025.

54.    Prior to October 25, 2025, Plaintiff had no actual knowledge of Defendants' use of the DBK Mark with products that competed directly with Plaintiff's DGK-branded goods or that were sold through the same retail channels as Plaintiff's products.

55.    Defendants' earlier use of the DBK Mark, to the extent it existed, was confined to the motocross community and did not overlap with Plaintiff's core skateboarding, streetwear, and action sports retail channels in a manner that would have put a reasonable trademark owner on notice of infringement.

56.    On information and belief, Defendants did not begin selling DBK-branded products through Zumiez—the same national action sports retailer though which Plaintiff's DGK-branded products are prominently sold—until March 2026.

57.    Archived versions of Zumiez's publicly accessible brand listing webpage, captured by the Internet Archive's Wayback Machine, confirm that neither "Dirt Bike Kidz" nor "DBK" was listed as a brand sold by Zumiez as of December 12, 2024.

58.    After Defendants expanded into Zumiez and began offering DBK-branded apparel alongside Plaintiff's DGK-branded products in the same retail environment, a likelihood of consumer confusion arose.

59.    After Defendants redirected or expanded their business into Plaintiff's established markets and retail channels, Defendants came into direct competition with Plaintiff and created market confusion.

60.    Prior to Defendants' recent expansion into Zumiez and other shared retail outlets, Defendants' use of the DBK Mark was limited primarily to the motocross niche.

- 23 -

COMPLAINT

61.   On information and belief, Defendants' expansion into Zumiez and similar shared retail channels was accompanied by a deliberate shift in Defendants' marketing and product design to more closely emulate the aesthetic, style, and marketing position of Plaintiff's DGK brand, including the use of similar fonts, colorways, and design elements. This progressive encroachment into Plaintiff's established market space represents a material change in the nature and scope of Defendants' use of the DBK Mark.

62.   Upon discovering Defendants' infringing conduct, Plaintiff acted promptly and diligently to protect its rights. In early April 2026, Plaintiff retained counsel to investigate and address Defendants' infringement. Plaintiff's counsel sent a formal cease-and-desist letter to Defendants on April 24, 2026, demanding that Defendants immediately cease all use of the DBK Mark.

63.   Rather than comply with Plaintiff's demand, Defendants, through their counsel, engaged in discussions with Plaintiff's counsel regarding potential restrictions on Defendants' use of the DBK Mark.

64.   Plaintiff's brief period of engagement in good-faith discussions with Defendants does not constitute unreasonable delay. The parties' negotiations lasted approximately four weeks, after which it became clear that Defendants would not voluntarily cease their infringing conduct, prompting Plaintiff to proceed with this action.

**D. Strength of Plaintiff's DGK Marks and Continuing Harm**

65.   The DGK Marks are commercially strong marks that have achieved extensive consumer recognition through more than two decades of continuous, exclusive use in interstate commerce. The marks are distinctive and arbitrary as applied to skateboarding and action sports apparel and accessories, and have acquired secondary meaning among the relevant consuming public.

///

- 24 -

COMPLAINT

66.     The strength of the DGK Marks is confirmed by: (a) multiple federal trademark registrations, several of which have achieved incontestable status; (b) more than twenty years of continuous, substantially exclusive use; (c) extensive advertising and promotional activities; (d) significant unsolicited media coverage; (e) numerous high-profile brand collaborations; and (f) nationwide distribution through retail partners such as Zumiez as well as Plaintiff's own direct-to-consumer website.

67.     Defendants' infringement has caused and continues to cause actual consumer confusion and irreparable harm to Plaintiff's goodwill and reputation. On information and belief, consumers have actually been confused as to the source, sponsorship, or affiliation of Defendants' DBK-branded products, mistakenly believing them to be associated with or authorized by Plaintiff.

68.     Defendants' infringement has caused and continues to cause economic harm to Plaintiff in the form of lost sales, diverted customers, and dilution of the distinctiveness and value of the DGK Marks. Plaintiff's damages are ongoing and will continue to accrue for so long as Defendants continue their infringing activities.

69.     On information and belief, Defendants have derived profits from their sale of DBK-branded products that trade on Plaintiff's goodwill, to which Plaintiff is entitled under 15 U.S.C. § 1117(a).

70.     Defendants' infringement is willful and in bad faith, warranting enhanced damages, an accounting of Defendants' profits, and an award of attorneys' fees pursuant to 15 U.S.C. § 1117(a). This case is exceptional within the meaning of 15 U.S.C. § 1117(a).

///

- 25 -

COMPLAINT

**CLAIMS FOR RELIEF**

**COUNT I**

**Federal Trademark Infringement (15 U.S.C. § 1114)**

71.    Plaintiff incorporates by reference all allegations set forth in ¶¶ 1-60 of this Complaint.

72.    Plaintiff's DGK Marks are federally registered as U.S. Registration Nos. 4451471, 4451472, 4451473, 3849975, 3849974, 3975469, and 7925759.

73.    Plaintiff has built substantial public recognition in and to its DGK Marks under which it does business in interstate commerce and maintains common-law rights to the DGK Marks through its extensive use of such marks.

74.    Defendants' actions described above and specifically, without limitation, their unauthorized use of the DBK Mark, which is nearly identical to Plaintiff's DGK Marks, in commerce to advertise, promote, market, and sell its apparel and accessories throughout the United States, constitutes infringement of Plaintiff's federally registered trademarks in violation of 15 U.S.C § 1114.

75.    Defendants' use of the DBK Mark without consent of Plaintiff is likely to cause confusion or mistake in the public mind or deceive the public, in violation of 15 U.S.C § 1114(1).

76.    Defendants' violations of 15 U.S.C § 1114(1) have caused, and, unless enjoined by this Court, will continue to cause irreparable injury to Plaintiff, which is not fully compensable in monetary damages. Plaintiff is therefore entitled to a preliminary and permanent injunction enjoining and restraining Defendants from use of the DBK Mark or any mark confusingly similar to Plaintiff's DGK Marks.

77.    Plaintiff has no adequate remedy at law.

///

- 26 -

COMPLAINT

## COUNT II

### Federal Unfair Competition in Violation of 15 U.S.C. § 1125(a)

78. Plaintiff incorporates by reference all allegations set forth in ¶¶ 1-67 of this Complaint.

79. Defendants' use of the DBK Mark is a use in commerce of a word, term, name, symbol, or device, or combination thereof, and false designation of origin, which is likely to cause confusion or mistaken the public mind or to deceive the public as to the affiliation, connection or association of Plaintiff or as to the origin, sponsorship, or approval of Defendants' goods, services, or commercial activities.

80. Defendants' acts constitute false designation of origin, false endorsement, and unfair competition in violation of 15 U.S.C. § 1125(a)(1)(A).

81. As a direct and proximate result of the foregoing acts, Plaintiff has been damaged and has suffered, and will continue to suffer, significant damages, in an amount to be proved at trial.

82. Defendants' conduct has been intentional and willful and is calculated specifically to trade off the goodwill that Plaintiff has developed in the DGK Marks and the reputation the DGK Marks has earned in the public's eyes. Pursuant to 15 U.S.C. § 1117(a), this case is exceptional and Plaintiff is entitled to recover its reasonable attorney's fees incurred in this action.

83. In addition, Defendants' violations of 15 U.S.C. § 1125(a) have caused and, unless enjoined by this Court, will continue to cause irreparable injury to Plaintiff's goodwill, business identity, and reputation. Plaintiff is therefore entitled to a preliminary and permanent injunction enjoining and restraining Defendants from use of the DBK Mark or any mark that is confusingly similar to the DGK Marks.

///

- 27 -

## COUNT III

### Violation of California Unfair Competition Law (Section 17200, *et seq.* of The Cal. Bus. & Prof. Code)

84.   Plaintiff incorporates by reference all allegations set forth in ¶¶ 1-73 of this Complaint.

85.   Defendants have committed acts of unfair business practices as defined by California Business and Professions Code Section 17200, *et seq.* Defendants' unfair business practices are alleged in full above.

86.   All Defendants engaged and continue to engage in unfair competition or unlawful, unfair, or fraudulent business practices in violation of California law by using the infringing DBK Mark and selling products bearing the DBK Mark.

87.   Defendants were unjustly enriched by receiving payments for their sale of products bearing the DBK Mark.

88.   Defendants' actions, if not enjoined, will continue. Plaintiff has suffered and continues to suffer damages in an amount to be proven at trial consisting of, among other things, diminution in the value of and goodwill associated with the DGK Marks and injury to Plaintiff's business. Plaintiff is therefore entitled to injunctive relief.

89.   Plaintiff is entitled to recover damages in an amount to be determined at trial consisting of the profits made by Defendants in connection with their unauthorized use of the DBK Mark.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests the following relief in conjunction with the allegations set forth above in this Complaint.

A.   That this Court enter judgment against Defendants as indicated below:

1. Defendants committed trademark infringement and unfair competition in violation of 15 U.S.C §§ 1114, 1125(a), and common law;

- 28 -

COMPLAINT

2. Defendants willfully and knowingly committed acts of trademark infringement in violation of 15 U.S.C §§ 1114, 1125(a), and common law;

3. Defendants committed unfair business practices, as defined by California Business and Professions Code Section 17200, *et seq*.

B.     That this Court grant Plaintiff preliminary and permanent injunctive relief under 15 U.S.C. § 1051, *et seq*. restraining and enjoining Defendants and their agents, partners, servants, employees, officers, attorneys, managers, successors and assigns, and all persons acting in concert with or on behalf of Defendants from:

1. using, imitating, copying, or making any other infringing use of the DGK Marks and any other mark now or hereafter confusingly similar or identical thereto, including, without limitation on the Infringing Goods;

2. manufacturing, assembling, producing, distributing, offering for distribution, circulating, selling, offering for sale, advertising, importing, promoting, or displaying any goods or services under any simulation, reproduction, counterfeit, copy, or colorable imitation of the DGK Marks, including, without limitation on the Infringing Goods;

3. using any false designation of origin or false description or statement which can or is likely to lead to the trade or public or individuals, erroneously to believe that any good or service has been provided, produced, distributed, offered for distribution, circulated, sold, offered for sale, sponsored, approved, or authorized by or for Plaintiff, when such is not true in fact;

4. using any mark identical or confusingly similar to the DGK Marks;

5. engaging in any other activity constituting an infringement of the DGK Marks or of Plaintiff's rights in, or right to use or to exploit, said marks;

- 29 -

COMPLAINT

and

6. assisting, aiding, or abetting any other person or business entity in engaging in or performing any of the activities referred to in subparagraph (1) through (5) above.

C. That this Court order Defendants to hold in trust, as constructive trustees for the benefit of Plaintiff, Defendants' profits obtained from their provision of Defendants' goods and services under the DGK Marks;

D. That this Court order Defendants to provide Plaintiff a full and complete accounting of all amounts due and owing to Plaintiff as a result of Defendants' unlawful activities;

E. That this Court order Defendants to pay Plaintiff's damages and Defendants' profits pursuant to 15 U.S.C. § 1117(a) for Defendants' willful violation of the DGK Marks;

F. That this Court order Defendants to pay Plaintiff both the costs of this action and the reasonable attorneys' fees incurred in prosecuting this action;

G. That this Court order Defendants to pay pre-judgment and post-judgment interest in the maximum amount allowed under the law; and

H. Entry of an Order of this Court declaring this case exceptional and awarding Plaintiff its reasonable attorneys' fees; and

I. All other relief, both interim and permanent, as the Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby makes a demand for a trial by jury as to all issues in this lawsuit so triable.

///

- 30 -

COMPLAINT

Dated:  June 24, 2026

**DLA PIPER LLP (US)**

*/s/ Melissa A. Reinckens*
Melissa A. Reinckens (Bar No. 314657)
Licia E. Vaughn (Bar No. 185819)
Susan N. Acquista (Bar No. 253969)
**DLA PIPER LLP (US)**
4365 Executive Drive, Suite 1100
San Diego, California 92121-2133
Tel: (858) 677-1400
Fax: (858) 677-1401
melissa.reinckens@us.dlapiper.com
licia.vaughn@us.dlapiper.com
susan.acquista@us.dlapiper.com

*Attorneys for Plaintiff*

- 31 -

COMPLAINT